**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANTWAN L. JOHNSON,

      Petitioner,

vs.                                      Case No. 3:09-cv-427-J-32JBT

SEC'Y, FLA. DEP'T OF CORR., et al.,

      Respondents.

_____

## ORDER

## I. Status

Petitioner, an inmate of the Florida penal system, initiated this action by filing a *pro se* Petition (Doc. #1) for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges his 2002 state court (Duval County) conviction for aggravated child abuse and second degree murder on thirteen grounds. In grounds one through four, Petitioner contends that he was deprived of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when the trial court: admitted Williams[1] rule evidence of the Petitioner's abuse of the mother of the victim; gave an erroneous Williams rule cautionary instruction; permitted testimony inferring that Petitioner had a prior criminal record; and admitted gruesome autopsy photographs. In ground five, Petitioner asserts that he was deprived of his rights under the Fifth, Sixth and Fourteenth Amendments due to the cumulative effect of the trial court's errors as set forth in grounds one through four. In

---

[1] In Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847 (1959), the court held that evidence of another crime is admissible when relevant to prove a material issue, unless it is relevant only to show bad character or propensity.

grounds six and seven, Petitioner claims that he was denied his right to effective assistance of appellate counsel when counsel failed to argue on direct appeal that the trial court failed to conduct a <u>Richardson</u>[2] hearing after being advised of a discovery violation, and the trial court erred in denying Petitioner's motion for judgment of acquittal at the close of the State's case. In grounds eight through twelve, Petitioner contends that he was denied his right to effective assistance of trial counsel when counsel failed to: investigate, interview, depose or present a witness (Bobby Lee Johnson) who would have exonerated Petitioner; call a witness (Estrella Goff) who would have exonerated Petitioner; challenge the validity of the information filed by the State, which was not supported by the sworn affidavit of a material witness; file a motion to dismiss the information because it was not supported by the sworn affidavit of a material witness; and depose the State's expert witness, Dr. J. Whitworth. In ground thirteen, Petitioner asserts that trial counsel was ineffective for refusing to allow Petitioner to testify in his own defense.

Respondents have responded to the Petition. <u>See</u> Response to Petition for Habeas Corpus (Doc. #8) (hereinafter Response).[3] Petitioner has replied. <u>See</u> Reply to Respondents' Response Brief (Doc. #16). Thus, this case is ripe for review.[4]

---

[2] <u>See</u> <u>Richardson v. State</u>, 246 So.2d 771, 774-75 (Fla. 1971) (requiring a trial court to determine whether the state's discovery violation was: (1) inadvertent or willful; (2) trivial or substantial; and (3) prejudicial to the defendant's trial preparation).

[3] The Court hereinafter refers to the Exhibits (Doc. #10) submitted in support of the Response as "Ex."

[4] Respondents set forth the state court procedural history and do not contest the timeliness of this action. <u>See</u> Response at 1-4. Thus, the Court will not repeat the procedural history.

2

## II.  Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

## III.  Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), this Court's review "is 'greatly circumscribed and highly deferential to the state courts.'  Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).  "By its terms [28 U.S.C. ] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to th[re]e exceptions." Harrington v. Richter, 131 S.Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision[5] "was contrary to" federal law then clearly established in the holdings of [the United States Supreme]

---

[5] In Harrington, 131 S.Ct. at 785, the Court "h[eld] and reconfirm[ed] that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Id. at 785.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74. "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

### IV. Applicable Ineffectiveness Law

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S.Ct. 2052.

4

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S.Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S.Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir.) (citation omitted), cert. denied, 131 S.Ct. 647 (2010).

"A [petitioner] can establish ineffective assistance of appellate counsel by showing: (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal." Shere v. Sec'y, Dep't of Corr., 537 F.3d 1304, 1310 (11th Cir. 2008) (citations omitted).

The Supreme Court has held a criminal defendant's appellate counsel is not required to raise all nonfrivolous issues on appeal. Jones v. Barnes, 463 U.S. 745, 751-54, 103 S.Ct. 3308, 3312-14, 77 L.Ed.2d 987 (1983). In so holding, the Court noted, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52, 103 S.Ct. at 3313. Therefore, it is difficult for a defendant to show his counsel was ineffective for failing to raise certain issues on appeal, particularly if counsel did present other strong issues. Smith v. Robbins, 528 U.S. 259, 287-88, 120 S.Ct. 746, 765-66, 145 L.Ed.2d 756 (2000).

Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (per curiam).

A state court's adjudication of an ineffectiveness claim is accorded great deference. "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[6], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

## V. Findings of Fact and Conclusions of Law

## A. Grounds One Through Four

As previously noted, in grounds one through four, Petitioner contends that he was deprived of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when the trial court: admitted <u>Williams</u> rule evidence of the Petitioner's abuse of the mother of the victim; gave an erroneous <u>Williams</u> rule cautionary instruction; permitted testimony inferring that Petitioner had a prior criminal record; and admitted gruesome autopsy photographs. <u>See</u> Petition at 7-8, 11-14, 16-17, 19-22. Respondents contend that Petitioner's Fifth, Sixth and Fourteenth Amendment claims raised in grounds one through four are procedurally barred because these claims were not raised in the federal constitution sense on direct appeal. This Court agrees that these claims were raised only as issues of state law and that no federal claim was presented on direct appeal with respect to these four grounds.[7]

---

[6] <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009).

[7] Respondents also contend ground five was not raised in the federal constitution sense on direct appeal; however, this Court is satisfied that Petitioner exhausted the federal constitutional claim raised in ground five.

A petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. <u>See</u> <u>Castille v. Peoples</u>, 489 U.S. 346, 349, <u>reh'g denied</u>, 490 U.S. 1076 (1989); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>Turner</u>, 339 F.3d at 1281 (quoting <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999)). "This exhaustion doctrine 'is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.'" <u>Turner</u>, 339 F.3d at 1281 (quoting <u>O'Sullivan</u>, 526 U.S. at 845).

If a petitioner presents a federal claim in a federal habeas petition, he must have exhausted the same federal claim in state court rather than presenting the issue to the state courts in terms of trial court error or a violation of state law or procedure.

> To present a federal constitutional claim properly in state court, "the petitioner must make the state court aware that the claims asserted present federal constitutional issues." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998). "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." <u>Duncan v. Henry</u>, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865 (1995); <u>see</u> <u>also</u>, <u>Isaacs v. Head</u>, 300 F.3d 1232, 1254 (11th Cir. 2002) (Seriatim Opinions) (Opinion of Anderson J.). "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). "[T]o exhaust state remedies, petitioners must do more than present 'the state courts only with the facts necessary to state a claim for relief' and must additionally articulate the constitutional theory serving as the basis for relief." <u>Henry v. Dept. of Corr.</u>, 197 F.3d 1361, 1366

(11th Cir. 1999) (quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 116
S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996)).

<u>Zeigler v. Crosby</u>, 345 F.3d 1300, 1307 (11th Cir. 2003) (per curiam), <u>cert</u>. <u>denied</u>, 543 U.S.

842 (2004); <u>see</u> <u>also</u> <u>Baldwin v. Reese</u>, 541 U.S. 27, 32 (2004) (holding that "a state prisoner

does not 'fairly present' a claim to a state court if that court must read beyond a petition or

a brief (or a similar document) that does not alert it to the presence of a federal claim in order

to find material, such as a lower court opinion in the case, that does so.").

In issues one through four in his initial brief on direct appeal, Petitioner argued that

the trial court: (1) abused its discretion in admitting <u>Williams</u> rule evidence of Petitioner's

abusive conduct toward the mother of the victim; (2) erred by giving a legally erroneous

<u>Williams</u> rule instruction; (3) erred in permitting testimony inferring that Petitioner had a prior

record; and (4) abused its discretion in admitting gruesome autopsy photographs. He did

not argue that each of these four alleged errors, viewed alone, deprived him of his rights

under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.[8] <u>See</u>

Ex. I at 22-35.

It would be futile to dismiss this case to give Petitioner the opportunity to exhaust his

Fifth, Sixth and Fourteenth Amendment claims raised in grounds one through four because

they could have and should have been raised on direct appeal. Accordingly, the Fifth, Sixth

---

[8] Although Petitioner did not argue that each of these four alleged errors, when viewed alone, violated his federal constitutional rights, he did argue in his fifth issue on direct appeal that the cumulative effect of the these four errors deprived him of his federal and state due process rights to a fair trial. Ex. I at 25, 35-36.

and Fourteenth Amendment claims raised in grounds one through four have been procedurally defaulted.

"Procedural defaults in state courts will foreclose federal court review, absent a showing of cause and prejudice." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 770 (11th Cir. 2003) (citing Wainwright v. Sykes, 433 U.S. 72 (1977)), cert. denied, 540 U.S. 1222 (2004). "[A] federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice." Fortenberry v. Haley, 297 F.3d 1213, 1222 (11th Cir. 2002) (per curiam) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)), cert. denied, 538 U.S. 947 (2003). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner has not shown both cause excusing the default and actual prejudice resulting from the bar. Furthermore, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Thus, the Court will not address Petitioner's procedurally barred Fifth, Sixth and Fourteenth Amendment claims raised in grounds one through four.

Petitioner's exhausted claims of trial court error raised in grounds one through four present issues of state law that are not cognizable on federal habeas review. The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. See Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991). "Federal habeas relief is unavailable 'for errors of state law.'" Jamerson v. Secretary

9

for Dept. of Corrections, 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. McCoy v. Newsome, 953 F.2d 1252, 1264 (11th Cir.) (per curiam), cert. denied, 504 U.S. 944 (1992). As succinctly stated by the Eleventh Circuit:

> A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. Bronstein v. Wainwright, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. Mendiola v. Estelle, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992), cert. denied, 507 U.S. 975, reh'g denied, 507 U.S. 1046 (1993). Thus, Petitioner is not entitled to relief on the exhausted state law issues raised in grounds one through four.

Finally, even assuming arguendo that the First District Court of Appeal construed these four issues in the federal constitutional sense because Petitioner argued that the cumulative effect of these four errors denied him a fair trial, Petitioner is not entitled to relief. Upon thorough review of the record and the applicable law, this Court concludes that the First District Court of Appeals' adjudications of these claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on these claims.[9]

## B. Ground Five

In ground five, Petitioner asserts that he was deprived of his rights under the Fifth, Sixth and Fourteenth Amendments due to the cumulative effect of the trial court's errors as set forth in grounds one through four. Petition at 24-25. As noted by the Eleventh Circuit:

> "The cumulative error doctrine provides that an aggregation of non-reversible errors (*i.e.*, plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). We address claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial. See United States v. Calderon, 127 F.3d 1314, 1333 (11th Cir. 1997).

Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117 (11th Cir. 2012) (footnote omitted). In Morris, the Eleventh Circuit concluded that the petitioner's "cumulative error claim must fail. As demonstrated above, none of [the petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate. " Id.

As noted previously, Petitioner raised this cumulative error claim as his fifth issue on direct appeal. Upon thorough review of the record and applicable law, this Court concludes that the First District Court of Appeals' adjudication of this claim was not contrary to clearly

---

[9] This Court also finds these four claims to be without merit for the reasons set forth by the State in its answer brief on direct appeal, see Ex. J at 4-21, and for the reasons stated by the Respondents in their Response. See Response at 6-14.

established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to relief on this claim.

### C. Grounds Six and Seven

In grounds six and seven, Petitioner claims that he was denied his right to effective assistance of appellate counsel when counsel failed to argue on direct appeal that the trial court failed to conduct a Richardson hearing after being advised of a discovery violation, and the trial court erred in denying Petitioner's motion for judgment of acquittal at the close of the State's case. Petition at 28-32, 34-39. Petitioner raised these two claims in a petition for writ of habeas corpus filed with the First District Court of Appeal. That court denied the petition, per curiam, without issuing a written opinion. See Ex. R.

Upon thorough review of the record and applicable law, this Court concludes that the First District Court of Appeals' adjudication of these ineffective assistance of appellate counsel claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.[10] Thus, Petitioner is not entitled to relief on these two claims.

_____

[10] As noted by Respondents, appellate counsel could have reasonably decided that these claims should not be raised because they are not meritorious. Thus, Petitioner has shown neither deficient performance nor prejudice. See Response at 15-21.

12

## D. Ground Eight

In ground eight, Petitioner contends that he was denied his right to effective assistance of trial counsel when counsel failed to investigate, interview, depose or present a witness (Bobby Lee Johnson) who would have exonerated Petitioner. Petition at 43-49. Petitioner raised this claim in state court as ground one in a motion for post-conviction relief filed pursuant to Fla. R. Crim. P. 3.850 (hereinafter 3.850 motion). After holding an evidentiary hearing and identifying Strickland as the controlling legal authority, the state circuit court adjudicated this claim as follows:

> In ground one, the Defendant alleges that trial counsel, Teresa Sopp, rendered ineffective assistance of counsel for failing to investigate, interview, depose, or call his brother, Bobby L. Johnson, as a witness at trial. (Defendant's Motion at 6-9.) In his Motion and in his testimony at the evidentiary hearing, the Defendant alleges that Bobby Johnson would have testified that the Defendant was innocent and that it was the victim's mother, April Curtis, who murdered her l8-month-old child, Marquis Curtis. (Defendant's Motion at 6; Exhibit "C,"[11] pages 7-12.) When a defendant alleges ineffective assistance of counsel for failure to call a specific witness, a defendant is "required to allege what testimony defense counsel could have elicited from witnesses and how defense counsel's failure to call, interview, or present the witnesses who would have testified prejudiced the case." Bryant v. State, 901 So.2d 810, 821-22 (Fla. 2005); Nelson v. State, 875 So.2d 579, 583 (Fla. 2004).
>
> At the evidentiary hearing on the Defendant's Motion, Bobby Johnson testified that at the time of the Defendant's trial, he was available to testify and that he was serving a life sentence at a Florida correctional institution. (Exhibit "C," page 41.) Bobby Johnson also testified that he spoke on the telephone with Ms. Curtis on three occasions, and that she

---

[11] Where the circuit judge cites Exhibit C, he is referring to the evidentiary hearing transcript, which begins on page 89 of Ex. U in the exhibits before this Court.

came to visit him in jail on two separate occasions. (Exhibit "C," page 42.) During these calls and visits, Bobby Johnson testified that Ms. Curtis was depressed and told him that she had recently attempted suicide. (Exhibit "C," page 43-44, 46.) After the Defendant was arrested for the murder of Marquis Curtis, Bobby Johnson said that he wrote letters to trial counsel, Ms. Sopp, informing her that he had information pertaining to his brother's case, but that neither she nor her investigator ever contacted him. (Exhibit "C," pages 45-46.)

On cross examination, Bobby Johnson could not explain why he did not mention his phone calls with Ms. Curtis in the affidavit he provided in support of the Defendant's Motion. (Exhibit "C," page 47.) Bobby Johnson also admitted that he had been convicted of three felonies including a murder for which he was serving a life sentence. (Exhibit "C," pages 47-48.) Additionally, he admitted that he never contacted the Jacksonville Sheriff's Office regarding his conversations with Ms. Curtis and that he had no personal knowledge of the facts of the case. (Exhibit "C," page 48.) In fact, contrary to the Defendant's allegations, Bobby Johnson did not testify that [he] had any personal knowledge that Ms. Curtis committed the murder.

Trial counsel, Ms. Sopp, testified that after reviewing her file, she found several memos from her investigator regarding his investigation of witnesses whose names the Defendant had provided to her. (Exhibit "C," pages 55-56.) Among the witnesses the investigator spoke to was Bobby Johnson, the Defendant's father, not Bobby Johnson, the Defendant's brother. (Exhibit "C," page 56.) Ms. Sopp further testified that she did not remember the Defendant telling her about his brother Bobby, that Bobby Johnson's name was nowhere in the Defendant's file, and that she had no correspondence from Bobby Johnson in her files:

> I looked to see if I have [sic] a separate file folder labeled Bobby Johnson, which I do not. And then I looked in the correspondence panel of my file, my main file, where I keep all my correspondence. And I did not see any correspondence from someone named Bobby Johnson.

14

(Exhibit "C," pages 57-58; 72-74.) However, she did have a note from the investigator that the Defendant stated that he had a brother named Carl Johnson who was in prison. (Exhibit "C," page 72-73.)

This Court specifically finds that Ms. Sopp's testimony was both more credible and more persuasive than witness Bobby Johnson's testimony and the Defendant's testimony and allegations. See Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). Based on the witnesses' testimony, this Court finds that the Defendant did not ask Ms. Sopp to contact, interview, depose, and present Bobby Johnson as a defense witness. Accordingly, the Defendant has failed to establish error on the part of counsel. Strickland, 466 U.S. 668.

Assuming arguendo that the Defendant did ask Ms. Sopp to present his brother as a defense witness, the Defendant has failed to show he suffered prejudice. Bryant, 901 So.2d at 821-22; Nelson, 875 So.2d at 583. Bobby Johnson would not have made a credible or even helpful witness because he was serving a life sentence for murder, and more importantly, he had no personal knowledge of the facts of the case. (Exhibit "C," page 48.) Accordingly, the Defendant's first ground is denied.

Ex. U at 70-72.

Petitioner appealed the denial of his 3.850 motion, and the First District Court of Appeal affirmed, per curiam, without issuing a written opinion. See Ex. Z. Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts. Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.

## E. Ground Nine

Petitioner asserts that counsel was ineffective for failing to call a witness (Estrella Goff) who would have exonerated him. Petition at 52-55. Petitioner raised this claim in state court as ground two in his 3.850 motion, and the state circuit court adjudicated this claim as follows:

> At the evidentiary hearing on the Defendant's Motion, Ms. Sopp testified that her investigator had interviewed Ms. Goff at the Pretrial Detention Facility on April 25, 2001, and Ms. Sopp recounted the substance of what Ms. Goff said:
>
>> Which is that [Estrella Goff] started up a conversation with April Curtis. And April Curtis asked - and asked April Curtis how the baby was killed. And April Curtis said she did not know.
>>
>> And then Estrella Goff talked with April Curtis later on. And April Curtis told Estrella Goff that her boyfriend had turned himself in and confessed to beating, choking and smothering the baby. Estrella Goff wondered how April Curtis would know how her boyfriend killed the baby if she didn't know earlier but hadn't talked to him.
>>
>> Then Estrella Goff claims that April Curtis said, quote: I am so glad that he turned himself in because now I am going to get home detention and it will be an over with, end quote.
>>
>> Estrella Goff states that she could not believe [April] Curtis would say something like that given the circumstances.
>>
>> And then she went on to say that codefendant [April] Curtis did not confess to her, being Estrella Goff, but did confess to Gloria Phillips, an inmate in the same dorm.

16

(Exhibit "C," page 59.) Ms. Sopp further testified that she did not think that she would have been able to get Ms. Goff's testimony admitted at trial because it was double hearsay. (Exhibit "C," page 60.) Ms. Sopp also stated that she did not think that Ms. Goff's testimony was necessary because the person that Ms. Curtis purportedly confessed to, Gloria Phillips, was called as a defense witness at trial. (Exhibit "C," page 60.)

This Court specifically finds that Ms. Sopp's testimony was both more credible and more persuasive than the Defendant's testimony and allegations. See Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). The record clearly supports that Ms. Sopp made a tactical decision not to call Ms. Doff as a witness because she was not the person to whom April Curtis purportedly made her confession. (Exhibit "C," page 60.) Songer v. State, 419 So.2d 1044, 1047 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel"). As the Defendant has failed to show that trial counsel committed error in failing to call Ms. Goff as a defense witness, the Defendant's second ground is denied. Strickland, 466 U.S. 668.

Ex. U at 73-74.

As noted previously, the First District Court of Appeal affirmed the denial of Petitioner's 3.850 motion. Thus, there are qualifying decisions under AEDPA from the state circuit and appellate courts. Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.

**F. Grounds Ten and Eleven**

In ground ten, Petitioner contends that counsel was ineffective for failing to challenge the validity of the information filed by the State, which was not supported by the sworn affidavit of a material witness. Petition at 58-61. In ground eleven, Petitioner claims that counsel was ineffective for failing to file a motion to dismiss the information because it was not supported by the sworn affidavit of a material witness. Petition at 63-66. Petitioner raised these two claims in state court as grounds three and four in his 3.850 motion, and the state circuit court adjudicated these claims as follows:

> The Defendant's third and fourth grounds aver ineffective assistance of counsel for failing to object and attack the validity of the Information and the Amended Information because the Defendant alleges they were not supported by sworn statements or affidavits of witnesses. (Defendant's Motion at 14-20.) The Defendant's instant claims are wholly without merit. The State filed an Information in the instant case on June 1, 2001. (Exhibit "'D."[12]) On June 25, 2001, the State then filed a "Response to Demand and Demand for Reciprocal Discovery," in which the State listed its material witnesses and referenced their sworn statements. (Exhibit "E."[13]) The State also filled a "Supplemental Response to Demand for Discovery" on October 10, 2001, along with the filing of the Amended Information. (Exhibits F,"[14] "G."[15]) This Court notes that, "the filing of an amended information purporting to be a complete restatement of the charges supercedes and vitiates an earlier information." Anderson v. State, 537 So. 2d 1373, 1374 (Fla. 1989); see also Belton v. State, 468 So.2d 495 (Fla. 5th DCA 1985). Thus any

---

[12] See Ex. U at 175-76.

[13] See Ex. U at 177-79.

[14] See Ex. U at 180-81.

[15] See Ex. U at 182-83.

18

claim that the Defendant presents regarding the original Information is moot. Additionally, while the Amended Information superceded the original Information, the State's discovery response remains intact. The State's material witnesses and their sworn statements, as provided in the State's first discovery response, supported the filing of the Amended Information just as they supported the filing of the original information. As the Defendant has failed to demonstrate error by trial counsel, the Defendant's third and fourth grounds are denied.

Ex. U at 74-75.

As noted previously, the First District Court of Appeal affirmed the denial of Petitioner's 3.850 motion. Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of these two claims were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on grounds ten and eleven.

### G. Ground Twelve

Petitioner contends that counsel was ineffective for failing to depose the State's expert witness, Dr. J. Whitworth. Petition at 68-74. Petitioner raised this claim in state court as ground five in his 3.850 motion, and the state circuit court adjudicated this claim as follows:

In the Defendant's fifth ground for relief, he alleges that trial counsel was ineffective for failing to depose the State's expert witness Dr. J. Whitworth. (Defendant's Motion at 21-26.) At the evidentiary hearing, the Defendant testified that trial counsel, Ms. Sopp, gave no reason for not deposing Dr. Whitworth. (Exhibit "C," page 19-21). He alleged that she admitted to being unprepared to cross examine Dr. Whitworth. (Exhibit "C," page 21.) The Defendant also suggested that h[a]d

19

she deposed him, Ms. Sopp could have hired an expert for the defense who would have rebutted Dr. Whitworth's testimony. In her testimony, Ms. Sopp explained her reasons for not deposing Dr. Whitworth in the instant case:

> Prosecutor: Okay, Ms. Sopp, are you familiar with Dr. J. Whitworth?
>
> Ms. Sopp: Yes.
>
> Prosecutor: How are you familiar with him?
>
> Ms. Sopp: He is an expert in numerous cases that I have been involved with.
>
> Prosecutor: Have you deposed him before?
>
> Ms. Sopp: Several times.
>
> Prosecutor: Have you ever cross examined him in a trial before?
>
> Ms. Sopp: Several times.
>
> Prosecutor: Why didn't you depose him in this case?
>
> Ms. Sopp: Well, two reasons. One is that he had not really examined this baby or been involved with this baby before this baby died. So he didn't really have any record or history with this baby.
>
> And the second thing is that in the discovery my belief is that if a list of - a witness is listed as an expert, then the second part of that discovery requirement is that the sum and substance of the expert testimony must be provided in discovery. And that wasn't done in this case.
>
> So I felt like that since it wasn't done, that Dr. Whitworth could not testify, that nothing had been provided to me in discovery about the substance of his testimony.

> Prosecutor: And you made that objection, is that correct?
>
> Ms. Sopp: I made many objections to Dr. Whitworth's testimony.

(Exhibit "C," pages 60-62.) On cross examination, Ms. Sopp stated that even if she had deposed Dr. Whitworth, it would have done little to change the course of the trial. The testimony at issue was Dr. Whitworth's testimony that the young victim had bruises on the soles of his feet. When the post-conviction attorney suggested that had Ms. Sopp deposed Dr. Whitworth she could have learned of his testimony and could have hired her own child abuse expert, Ms. Sopp disagreed:

> The problem in this case, again, yes, I could have done that. But the problem as I saw it was that the other injuries were so significant that even if I got an expert on child abuse, we were still faced with these significant injuries, that somebody had abused this child, and you know, causing the death of the child.
>
> I don't think there was any question in this case that there had been child abuse. But that doesn't mean that I don't [sic] stop making objections.

(Exhibit "C," pages 66-71.)

This Court specifically finds that Ms. Sopp's testimony was both more credible and more persuasive than the Defendant's testimony and allegations. See Laramore v. State, 699 So. 2d 846 (Fla. 4th DCA 1997). The record clearly supports that Ms. Sopp made a tactical decision not to depose Dr. Whitworth based on her belief that the State could not call him as a witness unless the State disclosed the substance of his proposed testimony, pretrial, which the State did not. (Exhibit "C," pages 60-62.) Songer v. State, 419 So.2d 1044, 1047 (Fla. 1982); Gonzalez v. State, 579 So.2d 145, 146 (Fla. 3d DCA 1991) ("Tactical decisions of counsel do not constitute ineffective assistance of counsel"). Moreover, the "standard is reasonably effective counsel, not perfect or error-free counsel." Coleman v.

21

> *State*, 718 So.2d 827, 829 (Fla. 4th DCA 1998). As the
> Defendant has failed to show that trial counsel committed error
> in failing to depose Dr. Whitworth, the Defendant's fifth ground
> is denied.

Ex. U at 75-77.

As noted previously, the First District Court of Appeal affirmed the denial of

Petitioner's 3.850 motion. Upon thorough review of the record and the applicable law, this

Court concludes that the state courts' adjudications of this claim were not contrary to clearly

established federal law, did not involve an unreasonable application of clearly established

federal law, and were not based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to

relief on this claim.

## H. Ground Thirteen

Petitioner asserts that trial counsel was ineffective for refusing to allow Petitioner to

testify in his own defense. Petition at 79-83. Petitioner raised this claim in state court as

ground six in his 3.850 motion, and the state circuit court adjudicated this claim as follows:

> In the Defendant's sixth ground for relief, he alleges that
> trial counsel rendered ineffective assistance by refusing his
> request to testify on his own behalf at trial and threatening to
> withdraw as counsel if the Defendant proceeded with his desire
> to testify. (Defendant's Motion at 27-30.) At the evidentiary
> hearing, the Defendant testified that Ms. Sopp threatened to
> withdraw as counsel, "Because the state could use her against
> me." (Exhibit "C," page 22-23.) In other words, the Defendant
> believed that if he testified on his own behalf at trial, then Ms.
> Sopp could be called as a witness against the Defendant.
> (Exhibit "C," page 23.)
>
> Ms. Sopp testified that she discussed the options of
> testifying or not testifying at trial with the Defendant, and that

she never threatened to withdraw as the Defendant's counsel. (Exhibit "C," pages 64-65; 74-75.) She also stated that the only reason she would tell a client that she would withdraw, would be if "he was going to take the stand and say something different than he had already told me." (Exhibit "C," page 74-75.)

This Court specifically finds that Ms. Sopp's testimony was both more credible and more persuasive than the Defendant's testimony and allegations. See Laramore v. State, 699 So.2d 846 (Fla. 4th DCA 1997). It is unclear why the Defendant would have believed that the State would have the ability to call Ms. Sopp as a witness against him if he chose to testify on his own behalf. Additionally, Ms. Sopp adequately apprised the Defendant of his right to testify and the advantages and benefits of testifying or not testifying. As the Defendant has failed to show that trial counsel threatened to withdraw as counsel if he chose to testify on his own behalf, or that counsel committed error, the Defendant's sixth ground is denied.

Ex. U at 77-78.

As noted previously, the First District Court of Appeal affirmed the denial of Petitioner's 3.850 motion. Upon thorough review of the record and the applicable law, this Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on this claim.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. Petitioner's Motion for Stay and Abeyance (Doc. #20) is **DENIED**. See Response to Johnson's Motion for Stay and Abeyance (Doc. #21).

2.     The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

3.     The **Clerk of the Court** shall enter judgment denying the Petition and dismissing this case with prejudice.

4.     If Petitioner appeals this Order, the Court denies a certificate of appealability.[16] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk of the Court** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

---

[16] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).  Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.  Here, after consideration of the record as a whole, a certificate of appealability is not warranted.

5.      The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida this 24th day of July, 2012.

TIMOTHY J. CORRIGAN
United States District Judge

ps 6/6
c:
Antwan L. Johnson
Counsel of Record